# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:22-cv-00087-MR-WCM

| | | |
|---|---|---|
| SUZAN MCKINNEY PARRIS, as<br>Guardian Ad Litem for D.P., a minor, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | |
| CLEVELAND COUNTY BOARD<br>OF EDUCATION; MARK PATRICK,<br>in his individual capacity; and<br>LATOSA WILBURN, in her<br>individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the following motions which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation:

- Defendant Mark Patrick's Motion to Dismiss (Doc. 10);

- Defendant Latosa Wilbourn's Motion to Dismiss (Doc. 12); and

- Defendant Cleveland County Board of Education's Motion to Dismiss Plaintiffs' Complaint (Doc. 16).

## I.     Relevant Procedural Background

On February 15, 2022, Suzan McKinney Parris ("Plaintiff"), as Guardian Ad Litem for DP, a minor, filed this action in the Superior Court of Cleveland County, North Carolina against the Cleveland County Board of Education (the "Board"), Mark Patrick, in his individual capacity ("Patrick"), and Latosa Wilburn, in her individual capacity ("Wilbourn")[1] (collectively "Defendants"). Doc. 1-1.

On April 22, 2022, Patrick, with the consent of the Board and Wilbourn, removed the case to this Court. Doc. 1.

On May 12, 2022, Defendants filed the Motions to Dismiss along with supporting briefs. Docs. 10, 11, 12, 13, 16, and 17. Plaintiff subsequently responded in opposition. Docs. 21, 22, 23. Defendants have replied and Patrick has submitted a notice of supplemental authority, such that the Motions to Dismiss are ripe for ruling. Docs. 25, 26, 27, and 28.

## II.     Plaintiff's Allegations and Claims

In pertinent part, Plaintiff alleges as follows:

Plaintiff is the mother of DP who, at all relevant times, was a 13-year-old nonverbal middle school student with severe autism. Doc. 1-1 at ¶¶ 1, 16.

---

[1] In her Motion to Dismiss and her Answer, Wilbourn indicates that her name was misspelled in Plaintiff's Complaint as "Latosa Wilburn." <u>See</u> Doc. 12 at 1, Doc. 15 at 1.

DP was in an Individualized Education Program ("IEP") at North Shelby School ("North Shelby"). The IEP, which was created by North Shelby, required "a high level of close supervision, assistance, and prompting by trained school staff;" mandated that DP wear a helmet "during times of aggression to protect his head;" and indicated that DP did not respond well to physical touch. Id. at ¶¶ 17-19; 32.

The Board, through North Shelby, also created and implemented a Behavioral Intervention Plan ("BIP") for DP. Id. at ¶ 20. The BIP required North Shelby to keep an accurate daily behavioral log for DP. Id. at ¶ 21

On or about May 23, 2019, DP injured his head on an exposed drainpipe on the playground. Id. at ¶ 24. He was not wearing his protective helmet at the time. Id. at ¶ 25.

Shortly thereafter, Plaintiff received a call from Patrick, the principal of North Shelby, who informed Plaintiff that DP had injured his head on the playground and that, in the opinion of the school nurse, the injury required stitches. Id. at ¶ 27. Patrick did not call for emergency medical services but told Plaintiff that she needed to come to the school and inspect DP's wound. Id. at ¶ 28. Plaintiff requested that EMS be called since she was 30 minutes away from the school, but Patrick disregarded her request. Id. at ¶¶ 29-30.

When Plaintiff arrived at North Shelby, she discovered "that DP had been restrained both mechanically via his desk, and physically by Patrick, for

thirty minutes….." <u>Id</u>. at ¶ 31. DP, due to his injury and having been restrained for an extended period, was extremely agitated. <u>Id</u>. at ¶ 32.

Subsequently, DP was transported via EMS to "the Emergency Department." He required sedation during transport and further sedation when he arrived at the Emergency Department due to his agitated state. <u>Id</u>. at ¶¶ 35, 36. While there, he received treatment, including but not limited to staples to close the wound on his head, and continued sedation. <u>Id</u>. at ¶ 37.

On or about May 24, 2019, Plaintiff met with Patrick who informed Plaintiff that an internal investigation was underway and that he could not share any information regarding the circumstances of DPs injury. <u>Id</u>. at ¶ 38.

Plaintiff alleges that 21 days after DPs injury (presumably on or about June 13, 2019), Dr. Steven Fisher, the Superintendent of Cleveland County Schools, advised Plaintiff that DP was trying to run out of the playground when Wilbourn, who was a teacher's assistant, collided with him and caused him to fall backwards and strike his head. <u>Id</u>. at ¶ 42. Dr. Fisher also indicated that, "depending on what angle the incident was viewed from," it might appear that Wilbourn had pushed DP. <u>Id</u>. at ¶ 43. In addition, Dr. Nelly Aspel, the Exceptional Children's Director of Cleveland County Schools, informed Plaintiff that the incident had been reported to law enforcement. <u>Id</u>. at ¶ 44.

On or about August 14, 2019, DP's teacher at North Shelby and two teacher's assistants were terminated, and Wilbourn was reassigned to a different class. Id. at ¶ 45.

On about August 24, 2019, Plaintiff requested a closed-door meeting with the Board to raise her concerns about the handling of DP's injury. Id. at ¶ 47.

On or about September 23, 2019, Plaintiff "was granted her request." Id. Following the meeting,[2] Plaintiff learned that the police officer who had investigated the accident, "Officer Wampler," was the husband of the human resources supervisor for Cleveland County Schools. Id. at ¶ 48.

Plaintiff spoke to "Sergeant Porter" and expressed her concerns regarding a potential conflict of interest. Id. at ¶ 50. Plaintiff was informed (presumably by Sergeant Porter) that North Shelby had not reported the incident to law enforcement until May 29, 2019, and that Officer Wampler had opened the case, conducted his investigation, and closed the case all on or about May 30, 2019. Id. at ¶ 51. Plaintiff informed Sergeant Porter that North Shelby had not provided her with any information for 21 days (presumably between May 23 and June 13). Sergeant Porter directed Plaintiff to the police department to request that an investigation be initiated. Id. at ¶ 52.

---

[2] The undersigned reads Plaintiff's Complaint to indicate that this meeting occurred on September 23, 2019.

5

Though Plaintiff's Complaint is somewhat unclear in this regard, Plaintiff appears to allege that at some point she learned that DP's injury occurred under "a different set of facts." Id. at 53. Specifically, Plaintiff alleges upon information and belief that "the teacher" who prevented DP from exiting the playground "was prohibited from physically restraining him due to her surgery, so [Wilbourn] moved to intervene physically." Id. at ¶ 54. Further, Plaintiff asserts that DP allegedly attempted to bite Wilbourn who replied: "if you bite me, I'll bite you back and clock out." Id. at ¶¶ 55-56. Plaintiff also alleges that DP was on his knees and that Wilbourn struck DP's forehead with her hand which pushed him backwards causing him to hit his head on the exposed pipe. Id. at ¶ 57.

Plaintiff additionally alleges upon information and belief that during a prior, separate incident a North Shelby employee kicked DP while he was on the ground. Id. at ¶ 58.

Plaintiffs' Complaint asserts the following claims: 1) negligence/gross negligence; 2) negligent hiring/supervision/retention; 3) a federal Constitutional claim pursuant to 42 U.S.C. § 1983; 4) an "alternative" claim for violation of the North Carolina State Constitution; 5) violation of the Americans with Disabilities Act (the "ADA") 42 U.S.C. § 12101, *et seq.*; 6) punitive damages; 7) civil conspiracy; and 8) false imprisonment. These claims are brought against Defendants specifically as follows:

| | Patrick | Wilbourn | The Board |
|---|---|---|---|
| Negligence/Gross Negligence | X | X | X |
| Negligent hiring, negligent supervision, negligent retention | | | X |
| 42 U.S.C. 1983 | X | X | X |
| N.C. Constitutional Violations | | | X |
| American with Disabilities Act | X | X | X |
| Punitive Damages | X | X | X |
| Civil Conspiracy | X | X | X |
| False Imprisonment | X | X | |

## III. Legal Standards

### A. Immunity Defenses

The Board has moved to dismiss certain of Plaintiff's claims against it based on governmental immunity, and Patrick has moved to dismiss certain claims against him based on public official immunity. Both the Board and Patrick cite Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure in support of their motions. See Doc. 17 at 4; Doc. 11 at 3. A motion to dismiss made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute, while a motion to dismiss made under Rule 12(b)(2) tests whether the court has personal jurisdiction over a defendant. See Fed. R. Civ. P. 12(b)(1); (b)(2).

Governmental immunity is a "portion of the State's sovereign immunity which extends to local governments," Wray v. City of Greensboro, 370 N.C. 41, 47 (2017). Public official immunity is "a derivative form of sovereign

immunity." Green v. Howell, 274 N.C.App. 158, 164 (2020) (citing Epps v. Duke Univ., Inc., 122 N.C. App. 198, 203 (1996)). Both governmental and public official immunity are jurisdictional defenses. See Barrett v. Board of Education of Johnston County, 13 F.Supp.3d 502, 508 (E.D.N.C. 2014) ("Governmental immunity is a jurisdictional defense") (citing Medina v. United States, 259 F.3d 220, 223 (4th Cir.2001) (governmental immunity "affects [ ] jurisdiction")); see also McClure v. Charlotte-Mecklenburg Board of Education, No. 3:20-CV-00005-RJC-DCK, 2021 WL 7448762, at *4 (W.D.N.C. March 18, 2021) ("Assertion of the governmental immunity defense presents a question of jurisdiction, although North Carolina courts have not resolved whether the sovereign immunity defense challenges personal jurisdiction or subject-matter jurisdiction") (internal quotations omitted), *memorandum and recommendation adopted as modified*, 2022 WL 317641 (W.D.N.C. Feb. 2, 2022); Green, 274 N.C.App. at 164 (noting that trial court's denial of "Rule 12(b)(1) motions to dismiss based on sovereign immunity, and therefore public official immunity" was not immediately appealable, but that denial of "Rule 12(b)(2) and 12(b)(6) motions to dismiss based on public official immunity" was immediately appealable).

A dismissal for lack of subject matter jurisdiction or personal jurisdiction should be without prejudice, since in such a context the court is unable to reach the merits of the case. See e.g., Beazer E., Inc. v. U.S. Navy, 111 F.3d 129, 134

8

(4th Cir. 1997) (unpublished); <u>CP # 1109, LLC v. Cont'l Motors Servs., Inc.</u>, 741 F. App'x 946, 947 (4th Cir. 2018) (per curiam) (modifying the district court's dismissal for lack of personal jurisdiction to be without prejudice); <u>S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC</u>, 713 F.3d 175, 185 (4th Cir. 2013) (explaining that when a court "lacks jurisdiction [it] has no power to adjudicate and dispose of a claim on the merits").

### B. Rule 12(b)(6)

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 189, 192 (4th Cir. 2009); <u>accord</u> <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." <u>Consumeraffairs.com</u>, 591 F.3d at 255; <u>see</u> <u>Giacomelli</u>, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>accord</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

9

inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>accord</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. <u>Twombly</u>, 550 U.S. at 570; <u>Consumeraffairs.com</u>, 591 F.3d at 256.

IV.    Discussion

A. Negligence-Based Claims

All Defendants move to dismiss Plaintiff's negligence-based claims against them, albeit on different bases.

1.    Against Patrick

Patrick contends that Plaintiff's claim asserting "negligence/gross negligence" against him is barred by public official immunity.

Under North Carolina law, "[t]he public immunity doctrine protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties." <u>Campbell v. Anderson</u>, 156 N.C. App. 371, 376 (2003). "In practice, the immunity 'precludes suits against public officials in their individual capacities and protects them from liability as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" <u>R.A. v. Johnson</u>, 36 F.4th 537, 542 (4th Cir. 2022) (quoting <u>Hart v. Brienza</u>, 246 N.C. App. 426, 431

(2016)); see also Hunter v. Transylvania Cty. Dep't of Soc. Servs., 207 N.C. App. 735, 737 (2010) ("A public official can only be held individually liable for damages when the conduct complained of is malicious, corrupt, or outside the scope of official authority").

Plaintiff primarily argues that Patrick is not entitled to public official immunity because Patrick has been sued in his individual capacity. See Doc. 21 at 7-8 (citing Estate of Long v. Fowler, 378 N.C. 138, 144 (2021) ("[P]ublic employees may be held individually liable for mere negligence in the performance of their duties")). This argument misses the point, though, since public official immunity applies to individual capacity claims. Rather, an initial question is whether Patrick should be considered a public official or a public employee, since public employees do not enjoy public official immunity. See R.A., 36 F.4th at 542 ("The immunity applies only to public officials, not public employees…"). On that issue, Patrick is appropriately considered a public official; "North Carolina courts have 'recognized that school officials such as superintendents and principals' are public officials, in part because they 'perform discretionary acts requiring personal deliberation, decision, and judgment.'" Id. (quoting Farrell v. Transylvania Cnty. Bd. of Educ., 175 N.C. App. 689, 695 (citing Gunter v. Anders, 114 N.C. App. 61, 67-68 (1994)).

11

Consequently, to state a claim against Patrick for negligence, Plaintiff must adequately plead facts that indicate Patrick's conduct was "malicious, corrupt, or outside the scope of official authority." R.A., 36 F.4th at 544.

Here, Plaintiff has alleged that Patrick's actions "were willful and wanton, done with reckless indifference or in total disregard for the rights and safety of others…" Doc. 1-1 at ¶ 65. Reading the Complaint liberally, it does not appear that Plaintiff has attempted to allege that Patrick's actions were corrupt or outside the scope of his authority. Accordingly, the undersigned has considered whether Plaintiff has alleged adequately that Patrick's actions were malicious.

"A malicious act…has three elements: it is '(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another.'" R.A., 36 F.4th at 545 (quoting Wilcox v. City of Asheville, 222 N.C. App. 285, 288 (2012)). Patrick challenges the sufficiency of Plaintiff's allegations regarding the third element. See Doc. 25 at 5 ("Plaintiff has not alleged facts that Defendant Patrick intended to injure the minor Plaintiff").

"The intent to injure can either be 'actual' or 'constructive.'" R.A., 36 F.4th at 545 (citations omitted). However, "North Carolina courts have emphasized that mere reckless indifference is insufficient to show a constructive intent to injure." Id. (internal quotations and citations omitted). The Fourth Circuit has explained:

To amount to constructive intent, "a plaintiff must show that the defendant's actions were 'so recklessly or manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent.'" Notably, North Carolina courts have found that direct excessive force causing serious or fatal injury can be sufficient to survive a motion to dismiss or summary judgment on the question of constructive intent to harm. See, e.g., Wilcox, 222 N.C. App. at 294, 730 S.E.2d 226 (jury question on constructive intent to harm where defendant "fired six bullets into a slow-moving vehicle, knowing it was occupied by a passenger ... despite the absence of a clear public threat"); Chastain v. Arndt, 253 N.C. App. 8, 19, 800 S.E.2d 68 (2017) (jury question on constructive intent to harm where defendant "pulled the trigger of a loaded deadly weapon while it was pointed at a student's abdomen"). But even direct infliction of physical injury may not always be enough to create a jury question on constructive intent. See, e.g., Brown v. Town of Chapel Hill, 233 N.C. App. 257, 270, 756 S.E.2d 749 (2014) (no constructive intent to harm where, during an allegedly racially-motivated arrest, officer's use of handcuffs caused plaintiff "great pain"); DeBaun v. Kuszaj, 228 N.C. App. 567, 2013 WL 4007747 at *6 (2013) (no constructive intent to injure where defendant used taser on fleeing subject).

Id. at 545-546 (some internal citations omitted).

In this case, Plaintiff has alleged that, even though the school nurse indicated DP would need stitches, Patrick, the principal at North Shelby, declined to call EMS after Plaintiff requested that he do so, and that Patrick was personally involved in DP being restrained for over 30 minutes, notwithstanding that Patrick knew or should have known that DP's IEP

indicated DP did not respond well to physical touch. Doc. 1-1 at ¶¶ 28-30, 31; see also Doc. 1-1 at ¶ 63.

Although Plaintiff does not contend that Patrick actually intended to injure DP, when the allegations are taken as true and liberally construed, the undersigned is persuaded that Plaintiff's negligence-based claims against Patrick are sufficient to overcome Patrick's Motion to Dismiss at this stage of the proceedings. Cf. Marshall v. Frederick, No. 5:19-CV-69-BO, 2019 WL 3822321, at *5 (E.D.N.C. Aug. 12, 2019) (dismissing claims against principal where plaintiff did not plausibly allege that the principal had acted maliciously or corruptly; plaintiff's assertion that the principal behaved "punitively" was not "a reason to abrogate her immunity").

## 2. Against Wilbourn

Wilbourn argues that the Court should dismiss Plaintiffs' negligence and gross negligence claim against her because Plaintiff's allegations "sound in assault and battery" rather than negligence. See Doc. 13 at 4 ("Plaintiff could have plead a claim for assault and battery but chose not to do so").

However, the issue is not whether Plaintiff could have asserted additional claims against Wilbourn, but rather whether the negligence-based claims she has made should be allowed to proceed to discovery. On that issue, Wilbourn does not directly address the sufficiency of Plaintiff's negligence-based allegations. See Lail v. Woods, 36 N.C.App. 590, 592 (1978) (stating that

14

"there are situations where the evidence presented raises questions of both assault and battery and negligence"); <u>Lynn v. Burnette</u>, 138 N.C.App. 435, 441 (2000) (acknowledging that an intentional tort and willful negligence are discrete concepts but allowing plaintiff to sue in negligence were there was a question of whether injury was intentional or accidental).

### 3. Against the Board

The Board argues that governmental immunity applies, such that Plaintiff's claims of negligence and gross negligence; negligent hiring, supervision, and retention; and for punitive damages (presumably to the extent such claim is based on gross negligence) should be dismissed.

"'As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, *inter alia*, the state, its counties, and its public officials sued in their official capacity.'" <u>Herring ex rel. Marshall v. Winston–Salem/Forsyth County Bd. of Educ.</u>, 137 N.C.App. 680, 683 (citation omitted), *disc. review denied*, 352 N.C. 673 (2000). "A county or city board of education is a governmental agency, and therefore is not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority." <u>Seipp v. Wake County Bd. of Educ.</u>, 132 N.C.App. 119, 121 (1999) (citation omitted); <u>see also</u> <u>Magana v. Charlotte-Mecklenburg Board of Education</u>, 183 N.C.App. 146, 148 (2007) (same); <u>McClure</u>, 2021 WL 7448762, at *3.

15

Pursuant to North Carolina General Statute § 115C-42, a school board waives its "governmental immunity where it procures insurance through (1) a company or corporation licensed and authorized to issue insurance in [North Carolina]; or (2) a qualified insurer as determined by the Department of Insurance." Lucas v. Swain County Board of Education, 154 N.C.App. 357, 361 (2002).

### a. Materials Considered

The Board has attached to its Motion to Dismiss the Affidavit of Melody Coons, the records custodian for the North Carolina School Boards Trust ("NCSBT"). Doc. 17-1. Attached to Ms. Coons' Affidavit is a copy of the "Cleveland County Board of Education Coverage Agreement" issued by the NCSBT (the "NCSBT Agreement," Doc. 17-1 at 3-29) and a copy of a "Facultative Certificate of Reinsurance" issued by Safety National Casualty Corporation (the "Reinsurance Agreement," Doc. 17-1 at 30-48). The Board has also submitted the Affidavit of Dan Karpinski, the Board's Chief Financial Officer. Doc. 17-2.

These materials may be considered in the context of the Motion to Dismiss for the limited purpose of considering the Board's arguments concerning governmental immunity. See Barrett v. Board of Education of Johnston County, 13 F.Supp.3d 502, 513-514 (E.D.N.C. 2014) ("Here, the complaint alleges that the Board has waived immunity through its

procurement of liability insurance and has thereby waived its governmental immunity from liability for the alleged conduct. Because this question is one of jurisdiction, the Court may consider evidence outside of the pleadings without converting this motion to dismiss into one for summary judgment. Therefore, the Court has considered the affidavits of Melody Coons and Art Stanley submitted by the Board as evidence showing that the Board has not waived its immunity here") (internal citation omitted).

### b. The Board's Immunity

Mr. Karpinski states that the Board participated in the risk management program administered by the NCSBT, and that it "has not purchased or otherwise secured any liability insurance coverage or risk protection...other than that which it has obtained by virtue of its participation in the NCSBT." Doc. 17-2. The NCSBT Agreement refers to an "excess agreement" and Ms. Coons' affidavit explains that the Reinsurance Agreement is that excess agreement. Doc. 17-1.

The Board argues that the NCSBT Agreement does not waive the Board's governmental immunity, and that the Reinsurance Agreement waives the Board's immunity only to the extent that the Reinsurance Agreement provides coverage. The Board also contends, however, that coverage is not available at all under the Reinsurance Agreement in light of an applicable exclusion.

North Carolina courts, as well as federal district courts applying North Carolina law, have held that participation in the NCSBT does not qualify as the purchase of liability insurance sufficient to waive governmental immunity. See Barrett v. Board of Education of Johnston County, 13 F.Supp.3d 502, 513-514 (E.D.N.C. 2014) ("The Board's participation in the NCSBT does not qualify as a purchase of "insurance" under the statute") (citing Lucas v. Swain County Board of Education, 154 N.C.App. 357 (2002)); Craig v. New Hanover Cnty. Bd. of Educ., 185 N.C.App. 651 (2007), *rev'd on other grounds*, 363 N.C. 334 (2009); Frye v. Brunswick County Board of Educ., 612 F.Supp.2d 694, 703 (E.D.N.C. 2009) ("In cases involving materially indistinguishable agreements between school boards and NCSBT, the North Carolina Court of Appeals held that a school board's risk-management agreement with NCSBT does not waive governmental immunity because NCSBT does not qualify as liability insurance under N.C. Gen.Stat. § 115C–42") (collecting cases); see also NCSBT Agreement, Doc. 17-1 at 4 ("the NCSBT Coverage Agreement is not considered a waiver of governmental immunity as provided in N.C.G.S. §115C-42").

Here, Plaintiff does not argue that participation in the NCSBT waives immunity but instead asserts that the Board has waived its governmental immunity "to the extent of the Reinsurance Policy." Doc. 22 at 8-9.

Courts have held that an excess or reinsurance agreement may constitute a waiver of governmental immunity for the purposes of Section

115C-42. See Lucas, 154 N.C.App. at 365 ("we hold defendant's action in contracting with the Trust, which then contracted with a commercial insurer to provide excess coverage to defendant, constitutes a waiver of defendant's immunity under G.S. § 115C–42 to the extent of that coverage"); Jones v. Kearns, 120 N.C.App. 301, 303 (holding defendant city was entitled to partial summary judgment to the extent it had not waived its immunity through the purchase of insurance for claims under $250,000, but not as to claims exceeding that amount for which the city had excess coverage), *disc. review denied*, 342 N.C. 414 (1995).

The Board acknowledges that the Reinsurance Agreement "applies to claims above the $150,000 NCSBT fund limits up to $850,000." Doc. 17 at 7. The Board argues, however, that an exclusion applicable to the Reinsurance Agreement makes it clear that the Board has not waived immunity for certain claims. Specifically, the Board relies on Exclusion 12 of the NCSBT Agreement,[3] which, in pertinent part, excludes coverage for a claim:

> …arising out of or in connection with, in whole or in part: (a) willful violation of any law; (b) dishonest, fraudulent, malicious, wanton, willful, intentional, or criminal acts; (c) acts of reckless or deliberate indifference…. Provided, however, the General Liability coverage afforded by the Fund (but not the coverage afforded by Excess Insurance, if any) does apply, except as otherwise excluded under this

---

[3] The Reinsurance Agreement provides, generally, that "[a]ll exclusions" in the NCSBT Agreement also apply to the Reinsurance Agreement. Doc. 17-1 at 30.

19

Coverage Agreement, to Claims alleging negligent hiring, negligent training, negligent reporting, negligent investigation, negligent retention, and/or negligent supervision arising out of or in connection with the conduct excluded under this exclusion, subject to the Fund Limits shown in the Declarations. The Excess Insurance (if any) does not provide coverage for Claims to which this exclusion applies, including but not limited to Claims for negligent hiring, negligent training, negligent reporting, negligent investigation, negligent retention, and/or negligent supervision. This exclusion shall not apply to a Claim for Bodily Injury arising out of corporal punishment administered in compliance with the written corporal punishment policy of the Member School District.

Doc. 17-1 at 10.

The Board asserts that this provision explicitly excludes coverage for negligent hiring, supervision, and retention claims, and excludes Plaintiff's claims premised on conduct alleged to be willful, wanton, reckless, or grossly negligent. Doc. 17 at 10.

In her response, Plaintiff does not address the Board's position that claims for negligent hiring, supervision, and retention are expressly excluded from coverage under the Reinsurance Agreement. Further, Plaintiff appears to concede that the Reinsurance Agreement excludes coverage for claims of gross negligence. Instead, Plaintiff argues that her claim for "mere negligence" is not excluded. See Doc. 22 at 10-11 (asserting that the Board "is attempting to convince this Court that allegations of 'willful and wanton' acts 'done with

reckless indifference or in total disregard for the rights and safety of others'
are fatal to a separate claim for mere negligence" and that "[s]ince the
Reinsurance Agreement does not exclude claims for mere negligence, [the
Board] has waived its immunity from Plaintiff's claim for negligence….").

Plaintiff has alleged, however, that all of Defendants' allegedly negligent
and/or grossly negligent actions "were willful and wanton, done with reckless
indifference or in total disregard for the rights and safety of others…." Doc. 1-
1 at ¶ 65.

Further, in <u>A.G. v. City of Statesville</u>, No. 5:20-CV-00165-KDB-DCK,
2021 WL 2582577, at * 7-8 (W.D.N.C. June 23, 2021), a court in this district
found, in the context of a motion to dismiss and based on policy language
similar (if not identical) to that at issue here, that the Iredell-Statesville Board
of Education had not waived governmental immunity with respect to all of the
plaintiff's negligence claims. The court explained:

> all of the Plaintiff's negligence claims as pled are
> excluded from coverage. The coverage agreement
> excludes "any claim (other than a Personal Injury
> Claim) arising out of or in connection with, in whole or
> in part: (a) willful violation of any law; (b) dishonest,
> fraudulent, malicious, **_wanton, willful_**, intentional, or
> criminal acts; (c) acts of **_reckless_** or **_deliberate_**
> **_indifference_**; or (d) eminent domain or inverse
> condemnation." *See* Doc. No. 47-1 at 7, exclusion 12
> (emphasis added). Moreover, the same exclusion
> states: "The Excess Insurance (if any) does not provide
> coverage for Claims to which this exclusion applies,
> including but not limited to Claims for negligent

hiring, negligent training ... and/or negligent supervision." *Id*. Plaintiffs' Amended Complaint specifically alleges the Board's actions and inactions were either "willful, wanton and/or reckless" or "grossly negligent and/or committed in reckless disregard for L.G.'s rights." (Doc 24; ¶¶120, 172). Accordingly, this exclusion applies to exclude coverage for Plaintiff's general negligence claim (Claim 4) and negligent hiring, etc. claim (Claim 10).

2021 WL 2582577, at *8 (emphasis in original).

Therefore, the undersigned will recommend that the Board's Motion to Dismiss be granted with respect to Plaintiff's negligence-based claims and that such claims be dismissed for lack of jurisdiction. See J.W. v. Johnston County Board of Education, No. 5:11–CV–707–D, 2012 WL 4425439, at *11 (E.D.N.C. Sept. 24, 2012) (granting a school board's motion to dismiss plaintiff's claims of intentional torts (obstruction of justice and wrongful discharge) as well as for negligent supervision and negligent hiring, based on similar policy language); Patrick v. Wake County Dept. of Human Services, 188 N.C.App. 592, 596 (2008) ("A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy") (citing Norton v. SMC Bldg. Inc., 156 N.C.App. 564 (2003)); Frye, 612 F.Supp.2d at 704 (granting motion to dismiss and dismissing tort claims based on governmental immunity because agreement between NCSBT and defendant was not liability insurance and the excess insurance agreement explicitly excluded plaintiffs' claims); Stacy v. Merrill, 191 N.C.App. 131, 138

(2008) (affirming dismissal of claims against school board on motion to dismiss where no coverage existed "under either the Trust Fund Agreement or the Reinsurance Agreement").

## B. Section 1983 Claim

42 U.S.C. § 1983 allows civil actions to be brought against state actors who cause the "deprivation of any rights, privileges, or immunities secured by the Constitution…." 42 U.S.C. § 1983.

In this case, Plaintiff asserts a Section 1983 claim against all Defendants "for deliberate indifference to the specific threat of harm to Plaintiff, and the critical medical needs of minor Plaintiff, as an individual with a documented disability." Doc. 1-1 at ¶ 75. Plaintiff further alleges that:

> As a direct and proximate result of the [Board] and/or its employees' deliberate indifference by placing minor Plaintiff in a position of danger, D.P. suffered severe and permanent physical and psychological injuries and was forced to endure extreme pain, suffering, and emotional distress and mental anguish together with a total deprivation of his rights guaranteed him by the Constitution of the United States of America, including but not limited to, his substantive due process rights under the Fourteenth Amendment to bodily integrity and to be free from state-created danger.

> Doc. 1-1 at ¶ 87.

The undersigned construes Plaintiff's allegations as asserting a substantive due process claim under the Fourteenth Amendment, redressable through Section 1983.

## 1. State Created Danger (all Defendants)

All parties discuss the viability of Plaintiff's Section 1983 claim based on whether Plaintiff has plausibly alleged a "state created danger." See Doc. 11 at 8; Doc. 13 at 6; Doc. 17 at 13; Doc. 21 at 11; Doc. 22 at 11; Doc. 23 at 9.

As the Fourth Circuit recently explained:

> The state-created danger doctrine applies where (1) the state actor directly "created or increased the risk" of the harm to the victim and (2) "did so directly through affirmative acts." It is a "narrow exception to the general rule that state actors are not liable [under the Due Process Clause] for harm *caused by third parties*."
>
> Callahan v. North Carolina Dept. of Public Safety, 18 F.4th 142, 146-147 (4th Cir. 2021) (internal citations omitted) (emphasis supplied).

"The creation or increase of danger through affirmative conduct is a high burden for liability." McClure v. Charlotte-Mecklenburg Board of Education, No. 3:20-CV-00005-KDB-DCK, 2022 WL 317641 at * 4 (W.D.N.C. Feb. 1, 2022). The state "through its affirmative acts, must 'itself create[ ] the dangerous situation that resulted in a victim's injury,' such that it becomes much more akin to an actor itself directly causing harm to the injured party." Doe v. Rosa, 795 F.3d 429, 440 (4th Cir. 2015) (quoting Pinder v. Johnson, 54 F.3d 1169,

1177 (4th Cir. 1995) (modification in <u>Doe</u>); <u>see also</u> <u>McClure</u>, 2022 WL 317641 at *4 ("Keeping this high standard in mind, Plaintiff's allegation that the school imprudently released students into a parking lot at a standard dismissal time after breaking up an in-school fight and then allowed Plaintiff to board the bus with his injuries from the subsequent fight does not rise to the level of affirmative action required to trigger liability under the state-created danger doctrine").

It is not apparent, though, that the doctrine applies in this case. As discussed above, the doctrine allows a plaintiff to hold a state actor liable for harm caused by a *third party* when the state actor takes affirmative steps that create or increase the risk of harm by that third party. <u>Cf.</u> <u>Doe v. Montgomery County Board of Education</u>, Civ. No. 21-0360, 2021 WL 6072813, at *9, 12 (D. Md. Dec. 23, 2021) (denying defendants' motion to dismiss Section 1983 claim where plaintiffs alleged sufficiently that individual defendants increased the risk that plaintiffs would be assaulted by third parties in school locker room); <u>D.J. by & through Hughes v. Sch. Bd. of Henrico Cty.</u>, 488 F. Supp. 3d 307, 328–329 (E.D. Va. 2020) (holding that discovery was required to determine whether a principal could be held liable for her acts and omissions under § 1983 when she was aware of instances of race-based attacks in a high school locker room and failed to implement supervision).

Here, in contrast, Plaintiff alleges that the harm was inflicted by Defendants themselves, not third parties.

### 2.        Municipal Liability (the Board)

The Board contends that Plaintiff has failed to allege a sufficient basis for imposing municipal liability on the Board.

The Supreme Court has stated that, under Section 1983, "a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, "[t]o hold a municipality liable for a constitutional violation under § 1983, a plaintiff must show that it was an official policy or custom of the municipality that caused the violation." Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004). "The 'official policy' requirement is 'intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" W.E.T. v. Mitchell, No. 1:06CV487, 2007 WL 2712924, at *10 (M.D.N.C. Sept. 14, 2007) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in Pembaur)).

These principles also apply to school boards. See Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 522 n. 3 (4th Cir. 2000) (applying Monell to Section 1983 claim brought against school board and noting that "[i]n Monell, the

26

Court recognized that school boards and municipalities are indistinguishable for purposes of § 1983").

Here, Plaintiff has not alleged that an official Board policy or custom caused Plaintiff's injuries.

Further, while Plaintiff has alleged that the Board "failed to properly train and supervise Wilbourn with respect to proper techniques to be used with students with disabilities, how to implement students' IEP and BIP, how to protect and safeguard students with disabilities, and how to properly take other preventive measures," the Complaint does not include facts that would support an inference that the Board's alleged failure to train evidenced "a 'deliberate indifference' to [DP's] constitutional rights." W.E.T., 2007 WL 2712924, at *11 (explaining that a Section 1983 claim based on a school board's alleged failure to train was actionable "only where the municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to a citizen's constitutional rights" and dismissing claim against school board where plaintiff failed to allege board was notified of teacher's actions or aware of any risk of harm to student, failed to allege specific instances of deficient training by the board, and failed to "establish a causal connection between an alleged failure to train and the alleged injury to W.E.T. through their allegations of a single instance of unconstitutional activity") (citing Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994)); cf. Williams v. Fulton County School

<u>Dist.</u>, 181 F. Supp. 3d 1089, 1128–29 (N.D. Ga. 2016) (holding that plaintiff stated Section 1983 supervisory liability claim against principal where complaint alleged facts suggesting that principal knew offending teacher was "harming disabled students for three years and did nothing about it — or worse, took actions that may have condoned or encouraged it").[4]

### 3. "Conscience Shocking" Behavior (Wilbourn and Patrick)

Wilbourn and Patrick argue that Plaintiff has failed to allege "conscience shocking" behavior sufficient to support a substantive due process claim.

The Fourth Circuit has recognized that students have a "constitutionally protected substantive due process right" "to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court." <u>Hall v. Tawney</u>, 621 F.2d 607, 613 (1980); <u>see also</u> <u>id</u>. at 611 ("there may be instances of corporal punishment administered by a state school official that give rise to an independent federal cause of action to vindicate substantive due process rights under 42 U.S.C. § 1983").

A court considering whether conduct rises to this level assesses "whether the force applied caused injury so severe, was so disproportionate to the need

---

[4] While Plaintiff alleges that DP was kicked by a North Shelby employee during a previous incident, Plaintiff does not allege that the Board was aware of that incident.

28

presented, and was so inspired by malice or sadism rather than careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience." Id. In other words, "conduct wrong enough to register on a due process scale [is] conduct that shocks the conscience, and nothing less." Waybright v. Frederick Cty., Md., 528 F.3d 199, 205 (4th Cir. 2008) (internal quotation marks omitted); see also Brown v. Ramsey, 121 F.Supp.2d 911, 918 (E.D.Va. 2000) (granting summary judgment and dismissing plaintiff's substantive due process claim alleging special education teacher improperly placed student with autism in a suffocating "basket hold" after considering whether plaintiff could establish "(1) an application of force; (2) causing severe injury; (3) the force applied was disproportionate to the need presented; and (4) the force applied was so inspired by malice or sadism or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience").

Wilbourn asserts, without elaboration, that her alleged acts were not "conscience shocking, in a constitutional sense." Doc. 13 at 9. Plaintiff has alleged, however, that Wilbourn stated she would bite DP if he bit her first and that she struck him on the forehead while he "was on his knees, as a sign of submission, which pushed him backwards, causing him to hit his head on the protruding pipe," resulting in a "large open wound on his head" and a trip to

the Emergency Department via EMS. Doc. 1-1 at ¶¶ 56-57; 31-37. Taking these allegations in the light most favorable to Plaintiff, it does not appear "beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle" Plaintiff to relief. See W.E.T. v. Mitchell, No. 1:06CV487, 2007 WL 2712924, at *5 (M.D.N.C. Sept. 14, 2007) (quoting Hall, 621 F.2d at 614, and denying special needs therapist's motion to dismiss substantive due process claim where plaintiff alleged therapist "sharply rebuked" student for talking and then forcefully placed a piece of masking tape over student's mouth which, because of student's severe asthma, caused breathing problems, and explaining that "inquiring into the existence of evidence of malice is premature at this stage of the litigation, and is more appropriate for consideration upon the filing of a motion for summary judgment"). The undersigned therefore concludes that Plaintiff's Section 1983 claim against Wilbourn should be allowed to proceed.

Similarly, and for the reasons discussed above with respect to Plaintiff's negligence-based claims, the undersigned is persuaded that Plaintiff has sufficiently stated a Section 1983 against Patrick at this stage of the litigation.

## C. ADA

All Defendants argue that Plaintiff's ADA claim should be dismissed because Plaintiff has not exhausted her administrative remedies as required

by the Individuals with Disability Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*[5]

"The IDEA provides funds for states to educate children with disabilities, subject to conditions imposing substantive requirements on the education that is provided." R.F. v. Cecil Cty. Pub. Sch., 919 F.3d 237, 241 (4th Cir. 2019). "In return for the receipt of federal education funding, states are required by the IDEA to provide each of their disabled children" with a free and appropriate public education ("FAPE"). M.M. v. Sch. Dist., 303 F.3d 523, 526 (4th Cir. 2002).

"[A] FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." Fry v. Napoleon Cmty. Sch., 580 U.S. 154, 137 S. Ct. 743, 748-49 (2017) (quoting 20 U.S.C. § 1401(9), (26), (29)). "Because parents and school representatives sometimes cannot agree on such issues, the IDEA establishes formal procedures for resolving disputes," Fry, 137 S. Ct. at 749, and requires "a system of administrative review before any claims arising under it may be pursued in

---

[5] Although Plaintiff asserts that her claim for "discrimination on the basis of a disability" in violation of the ADA is lodged against "all defendants," see Doc. 1-1 at 14, it appears that Plaintiff's allegations are directed toward the Board in particular. Id. at ¶ 101 ("The claims under the ADA are brought against CCB pursuant to 42 U.S.C. § 12101"); ¶ 107 (alleging that the Board "failed to provide comparable access to services, benefits, activities….").

31

state or federal court." <u>E.L. ex rel. G.L. v. Chapel Hill–Carrboro Bd. of Educ.</u>, 975 F. Supp. 2d 528, 531 (M.D.N.C. 2013), *aff'd sub nom.* <u>E.L. ex rel. Lorsson v. Chapel Hill–Carrboro Bd. of Educ.</u>, 773 F.3d 509 (4th Cir. 2014).

This administrative exhaustion requirement "also applies to claims under the ADA, the Rehabilitation Act, or other similar laws that, in substance, seek relief for the denial of a FAPE." <u>Bouabid v. Charlotte Mecklenburg Schools Board of Education</u>, 3:19-cv-00030-RJC-DSC, 2020 WL 1082491, at *3 (W.D.N.C. March 6, 2020) (citing 20 U.S.C. § 1415(l); <u>Fry</u>, 137 S. Ct. at 752); <u>see also</u> <u>Z.G. by & through C.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ.</u>, 744 F. App'x 769, 778–79 (4th Cir. 2018) (holding the ADA and § 504 claims of a student diagnosed with autism and ADHD subject to the IDEA's administrative exhaustion requirement because "the crux of these claims is an effort to alter Z.G.'s educational placement [and] secure certain educational services").

However, "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee" of a FAPE. <u>Fry</u>, 137 S.Ct. at 748 (2017). In <u>Fry v. Napoleon Cmty. Sch.</u>, the Supreme Court explained that:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the

same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Id. at 756.

The Court went on to discuss various examples applying these distinctions, and noted that the defendant school board had offered the following example "illustrating the point":

suppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA…. the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion. A telling indicator of that conclusion is that a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse—as could an adult subject to similar treatment by a school official. To be sure, the particular circumstances of such a suit (school or theater? student or employee?) might be pertinent in assessing the reasonableness of the challenged conduct. But even if that is so, the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's

33

complaint does not concern the appropriateness of an educational program.

Id. at 756 n. 9.

In this case, the gravamen of the Complaint is not the denial of a FAPE. Rather, this matter, like the example above from Fry, involves allegations that a student with a disability was struck by a school employee. Accordingly, the exhaustion requirement of the IDEA does not apply. See K.M. v. Board of Education of Montgomery County, No. PX-17-2759, 2019 WL 330194, at *4 (D. Md. Jan. 25, 2019) ("the IDEA was not intended to preclude § 504 or ADA claims filed in federal court, even if those claims also implicate denial of a FAPE. However, where the plaintiff seeks relief under the ADA or § 504 'that is also available under' the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures before pursuing her claims in federal court. By contrast, if a plaintiff's ADA or § 504 claims do not seek relief also available under the IDEA, the plaintiff need not exhaust remedies under the IDEA before filing federal suit") (quoting Fry, 137 S.Ct. 743, 750 (2017)).[6]

### D. Civil Conspiracy

A civil conspiracy involves an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way, which agreement

---

[6] Defendants have not moved to dismiss Plaintiff's ADA on any basis other than Plaintiff's alleged failure to exhaust her administrative remedies under the IDEA.

results in injury to the plaintiff. <u>Stewart v. Kopp</u>, 118 N.C.App. 161, 165, *disc. review denied*, 340 N.C. 263 (1995).

Here, Plaintiff alleges that Wilbourn, Patrick, and the Board "did not act in good faith in their investigation" and "purposefully withheld and intentionally misrepresented their conduct in order to avoid responsibility…." Doc. 1-1 at ¶¶ 117-118. Such allegations are insufficient to state a claim for civil conspiracy.

First, "under North Carolina law, a municipality ordinarily cannot be a party to a conspiracy…." <u>Iglesias v. Wolford</u>, 539 F. Supp.2d 831, 835-836 (E.D.N.C. 2008); <u>Turner v. Randolph County</u>, 912 F. Supp. 182, 186 (M.D.N.C. 1995) (dismissing conspiracy claim because "all of the named defendants are agents of Randolph County and it is not possible for Randolph County to conspire with itself").

Second, the Complaint includes no factual allegations regarding an agreement among the Defendants.

### E. False Imprisonment

The elements of a claim for false imprisonment are: (1) illegal restraint of the plaintiff by the defendant; (2) by force or threat of force; (3) against the plaintiff's will. <u>Rousselo v. Starling</u>, 128 N.C.App. 439, 449 (1998); <u>see also</u> <u>Wilkerson v. Duke Univ.</u>, 229 N.C. App. 670, 674 (2013). "The restraint requirement…requires no appreciable period of time, simply sufficient time for

one to recognize his illegal restraint. The tort is complete with even a brief restraint of the plaintiff's freedom." Wilkerson, 229 N.C.App. at 674 (citation omitted). [7]

Here, taking Plaintiff's allegations as true and in a light most favorable to Plaintiff, Plaintiff has sufficiently alleged a claim of false imprisonment against Patrick and Wilbourn. See Doc. 1-1 at ¶ 122 ("Patrick and Wilborn [sic] intentionally confined D.P. within a limited area for more than thirty minutes without lawful privilege, contrary to the instructions of Paris [sic], and without consent of D.P. This confinement included but was not limited to, physically holding him down in a chair"); see also W.E.T., 2007 WL 2712924, at *8 (M.D.N.C. Sept. 14, 2007) (finding allegations that the individual defendant "unlawfully and without his consent, forcibly taped W.E.T.'s mouth shut; and that he remained in that condition for several minutes" were sufficient to state a claim for false imprisonment under North Carolina law, while also recognizing that "school officials have statutory authority to use 'reasonable

---

[7] Patrick has not moved for dismissal of Plaintiff's claim of false imprisonment based on public official immunity, and North Carolina courts are split on whether public official immunity bars intentional tort claims. See Hensley v. Price, 876 F.3d 573, 587 (4th Cir. 2017) ("the issue of whether public official immunity can apply to intentional tort claims…splits courts in North Carolina") (collecting cases); see also White v. City of Greensboro, 532 F.Supp.3d 277, 329 (M.D.N.C. 2021) (citing Maney v. Fealy, 69 F.Supp. 3d 553, 564-65 (M.D.N.C. 2014)).

force in the exercise of lawful authority to restrain or correct pupils and maintain order") (quoting N.C.G.S. § 115C-390)).[8]

## F. North Carolina Constitutional Claim

"Governmental immunity does not apply to…North Carolina constitutional claims." Frye, 612 F.Supp.2d at 704 (E.D.N.C. 2009) (citing Corum v. Univ. of N.C., 330 N.C. 761, 785–86 (1992)). However, a plaintiff may assert a direct claim under the North Carolina Constitution only when there is no adequate remedy at common law or under a state statute. See Corum, 330 N.C. 761 (holding that in the absence of an adequate state remedy, a claimant has a direct claim against the state under the North Carolina Constitution).

For an adequate state law remedy to exist, the remedy "must provide the possibility of relief under the circumstances." Craig v. New Hanover County Board of Education, 363 N.C. 334, 340 (2009). "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim." Id. North

---

[8] To the extent Wilbourn and Patrick argue that their restraint of DP was statutorily authorized, such arguments raise issues that are more appropriately considered at a later stage of the proceedings and on a more complete record. See Doc. 11 at 15 (citing N.C.G.S. § 115C-391.1 and N.C.G.S. § 115C-390.3 and asserting that "Defendant Patrick's actions in preventing minor Plaintiff D.P. from causing himself further injury while waiting for the arrival of EMS were reasonable, appropriate, and consistent with his statutory powers").

Carolina courts "have found adequate state law remedies to exist where a state law claim against an officer in his individual capacity remains even after the dismissal of official capacity claims against another defendant." Maney v. Fealy, No. 1:12CV800, 2013 WL 3779053, *9 (M.D.N.C. Jul. 18, 2013) (collecting cases); see also Cooper v. Brunswick Cnty. Bd. of Educ., No. 7:08–CV–48–BO, 2009 WL 1491447, *4 (E.D.N.C. May 26, 2009).

Here, as discussed above, Plaintiff has alleged certain claims adequately.

### G. Punitive Damages

"Punitive damages are not available under the ADA." Lewis v. North Carolina Dept. of Public Safety, No. 1:15-cv-284-FDW, 2019 WL 177480, at *20 (W.D.N.C. Jan. 11, 2019) (citing Barnes v. Gorman, 536 U.S. 181 (2002)).

However, punitive damages may be assessed in a Section 1983 action when the defendant's conduct is shown to be "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 51 (1983). Additionally, under North Carolina law, punitive damages may be awarded when compensatory damages are awarded and one or more of the following factors is present: (1) fraud; (2) malice; or (3) wanton and willful conduct. N.C.G.S. § 1D-15(a) (2006).

### 1. Against Wilbourn and Patrick

In keeping with the discussion above, the undersigned is not persuaded that Plaintiff's punitive damage claim against Wilbourn or Patrick should be dismissed at this stage and on the current record. See <u>W.E.T.</u>, 2007 WL 2712924, at *9 ("Plaintiffs allege that Mitchell was aware of W.E.T.'s disabilities and intentionally and forcefully placed masking tape on his mouth. Further the Complaint alleges that because of her long-standing familiarity with W.E.T.'s severe asthma and developmental disabilities, Mitchell was aware that her actions would result in harm to W.E.T. Taking all allegations in the light most favorable to the Plaintiff, the Court finds that W.E.T. has alleged facts that could give rise to an inference that Mitchell's actions were a 'conscious and intentional disregard of an indifference to the rights and safety of [the plaintiff], which the defendant knows or should know is reasonably likely to result to result in injury, damage, or other harm'").

### 2. Against the Board

As discussed above, the undersigned is persuaded that the Board is entitled to governmental immunity with respect to Plaintiff's negligence-based claims. Therefore, to the extent Plaintiff's claim for punitive damages against the Board is based in the Board's alleged negligence, such claim should be dismissed.

To the extent Plaintiff's claim for punitive damages is based on alleged liability pursuant to Section 1983 or the ADA, the undersigned will likewise recommend that this claim be dismissed. See Ripellino v. N.C. Sch. Bds. Ass'n, 158 N.C.App. 423, 427 (2003) (holding that as a governmental entity, the school board was immune from punitive damages); Barrett v. Board of Education of Johnston County, 13 F.Supp.3d 502, 515 (E.D.N.C. 2014) ("It is well settled that, absent statutory provisions to the contrary, municipalities are 'immune from punitive damages under 42 U.S.C. § 1983'") (quoting City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)); Longo v. Aspinwall, No. 1:19-cv-58-MOC-WCM, 2019 WL 3226431, at *6 (W.D.N.C. July 17, 2019) ("Congress cannot have intended to subject state agencies to punitive damages on claims brought under the ADA and the Rehabilitation Act") (citing Crain v. Cty. Bd. of Educ., No. 3:15cv188, 2015 WL 6449413, at *6 (W.D.N.C. Oct. 23, 2015)).

V.    **Recommendation**

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that:

(1) Defendant Mark Patrick's Motion to Dismiss (Doc. 10) be **GRANTED IN PART AND DENIED IN PART** as follows:

   a.  Plaintiff's claim for civil conspiracy be **DISMISSED.**

   b.  In all other respects, Patrick's Motion to Dismiss be **DENIED**, and the following claims against Patrick be allowed to proceed:

40

negligence/gross negligence; claim pursuant to Section 1983; violation of the ADA; punitive damages; and false imprisonment.

(2) Defendant Latosa Wilbourn's Motion to Dismiss (Doc. 12) be **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Plaintiff's claim for civil conspiracy be **DISMISSED**.

    b. In all other respects, Wilbourn's Motion to Dismiss be **DENIED**, and the following claims against Wilbourn be allowed to proceed: negligence/gross negligence; claim pursuant to Section 1983; violation of the ADA; punitive damages; and claim for false imprisonment.

(3) Defendant Cleveland County Board of Education's Motion to Dismiss Plaintiffs' Complaint (Doc. 16) be **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Plaintiff's claims for negligence/gross negligence; and negligent training, negligent supervision, and negligent retention be **DISMISSED WITHOUT PREJUDICE**.

    b. Plaintiff's claims pursuant to Section 1983, for violation of the North Carolina Constitution, for civil conspiracy, and for punitive damages be **DISMISSED**.

c. In all other respects, the Board's Motion to Dismiss be **DENIED**,
   and the following claim against the Board be allowed to proceed:
   violation of the ADA.

Signed: December 16, 2022

W. Carleton Metcalf
United States Magistrate Judge

<u>Time for Objections</u>

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.

**Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).